## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YD DEVELOPMENT LLC,<br>d/b/a The Proptech Scout,<br><br>        Plaintiff,<br><br>   v.<br><br>VIACHESLAV DAVIDENKO,<br>a/k/a David Davidenko,<br>d/b/a David Invest,<br>d/b/a DavidInvestAI, and<br>d/b/a Sunrise Capital Group,<br><br>        Defendant. | Case No.:  1:25-cv-05422 (AT) |

## DEFENDANT VIACHESLAV DAVIDENKO'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO TRANSFER

Nancy E. Wolff, Esq.
Elizabeth Safran, Esq.
COWAN DEBAETS ABRAHAMS
& SHEPPARD, LLP
60 Broad Street, 30th Floor
New York, New York 10004
Telephone: (212) 974-7474
Fax: (212) 974-8474

*Attorneys for Defendant Viacheslav Davidenko*

i

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................... 1

PRELIMINARY STATEMENT AND BACKGROUND ......................................... 1

ARGUMENT ........................................................................................................... 5

I.      THIS MATTER COULD HAVE BEEN BROUGHT
IN THE WESTERN DISTRICT OF TEXAS. ................................................ 6

II.     THE BALANCE OF THE "CONVENIENCE FACTORS"
WEIGHS IN FAVOR OF TRANSFERRING THIS
CASE TO THE WESTERN DISTRICT OF TEXAS. ............................................. 7

      A.     The Convenience of Likely Witnesses—
a Primary Factor—Weighs in Favor of Transfer. ......................................... 7

      B.     The Relevant Records and Primary Sources
of Proof Are Located in the Western District of Texas. ............................... 9

      C.     The Comparative Convenience of the
Parties Favors Transfer. .................................................................... 10

      D.     The Locus of Operative Facts, Another
Primary Consideration, Favors Transfer to Texas. ...................................... 11

      E.     The Availability of Process to Compel Attendance
of Unwilling Witnesses Is Neutral. .............................................................. 12

      F.     The Relative Means of the Parties Favors Transfer. .................................... 12

      G.     Familiarity with Governing Law Is Neutral
Since This Is a Federal Copyright Case. ....................................................... 14

      H.     The Weight Accorded to Plaintiff's Choice
of Forum Should be Minimal and Favors Transfer. ..................................... 14

      I.     The Interest of Justice and Trial Efficiency Favors Transfer. ..................... 15

            1.     Interest of Justice .......................................................... 15

2.      Trial Efficiency……………………………………………………17

CONCLUSION.................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                     **Page(s)**

*A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*,
   828 F. Supp. 2d 557 (E.D.N.Y. 2011) ............................................................... 16, 17

*AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*,
   326 F. Supp. 2d 525 (S.D.N.Y. 2004) .................................................................. 7

*Bare Body Laser Spa, Inc.* v. *Billings*,
   2024 WL 3445333 (S.D.N.Y. July 17, 2024) ....................................................... 8

*Caldwell v. Slip-N-Slide Recs., Inc.*,
   2011 WL 3251502 (S.D.N.Y. July 26, 2011) ....................................................... 9

*Capitol Recs., LLC v. VideoEgg, Inc.*,
   611 F. Supp. 2d 349 (S.D.N.Y. 2009) .................................................................. 11

*Columbia Pictures Indus., Inc. v. Fung*,
   447 F. Supp. 2d 306 (S.D.N.Y. 2006) .................................................................. 15

*Crescent Publ'g Grp. v. Am. Video Corp.*,
   1996 WL 143928 (S.D.N.Y. Mar. 29, 1996) ....................................................... 16

*Fantis Foods, Inc. v. Standard Importing Co.*,
   49 N.Y.2d 317 (1980) ......................................................................................... 17

*Fed. Ins. Co. v. Custom Expedite LLC*,
   2009 WL 508393 (S.D.N.Y. Feb. 24, 2009) ....................................................... 14

*Federman Assocs. v. Paradigm Med. Indus., Inc.*,
   1997 WL 811539 (S.D.N.Y. Apr. 8, 1997) ......................................................... 10

*Frame v. Whole Foods Mkt., Inc.*,
   2007 WL 2815613 (S.D.N.Y. Sept. 24, 2007) .................................................... 7

*Freeplay Music, LLC v. Thermaltake USA, Inc.*,
   2019 WL 12375285 (S.D.N.Y. July 9, 2019) ...................................................... 14

*Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*,
   415 F. Supp. 2d 370 (S.D.N.Y. 2006) .................................................................. 5, 6

*Gaynor v. Diamond*,
   2025 WL 2256662 (S.D.N.Y. Aug. 7, 2025) ...................................................... 8, 11, 12

*Indian Harbor Ins. Co. v. NL Env't Mgmt. Servs., Inc.*,
  2013 WL 1144800 (S.D.N.Y. Mar. 19, 2013) ....................................................... 18

*IXI Mobile (R & D) Ltd. v. Samsung Elecs. Co.*,
  2015 WL 4720293 (S.D.N.Y. Aug. 6, 2015) .................................................... passim

*Kimco Exch. Place Corp. v. Thomas Benz, Inc.*,
  34 A.D.3d 433 (2d Dep't 2006) ........................................................................... 16

*Kwik Goal, Ltd. v. Youth Sports Publ'g, Inc.*,
  2006 WL 1517598 (S.D.N.Y. May 31, 2006) ......................................................... 7

*Littlejohn & Co., LLC v. Safeguard Props., LLC*,
  2010 WL 11889064 (S.D.N.Y. Aug. 23, 2010) ................................................. 14, 15

*Nosirrah Mgmt., LLC v. EVmo, Inc.*,
  2023 WL 35028 (S.D.N.Y. Jan. 4, 2023) ................................................................ 6

*Royalty Network Inc. v. Dishant.com, LLC*,
  638 F. Supp. 2d 410 (S.D.N.Y. 2009) .................................................................. 16

*Strougo v. Brantley Cap. Corp.*,
  243 F.R.D. 100 (S.D.N.Y. 2007) ........................................................................... 6

*Tianhai Lace USA Inc. v. Forever 21, Inc.*,
  2017 WL 4712632 (S.D.N.Y. Sept. 27, 2017) ......................................... 7, 9, 11, 12

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) .............................................................................................. 5

*WellQuest Int'l, Inc. v. Genesis Intermedia.com, Inc.*,
  2001 WL 1246592 (S.D.N.Y. Oct. 18, 2001) ....................................................... 14

*Worldwide Futgol Assocs., Inc. v. Event Entm't, Inc.*,
  983 F. Supp. 173 (E.D.N.Y. 1997) ...................................................................... 15

**Statutes**

28 U.S.C. § 1338 .......................................................................................................... 6

28 U.S.C. § 1400(a) ..................................................................................................... 6

28 U.S.C. § 1404(a) ....................................................................................... 1, 5, 7, 15

**Rules**

Fed. R. Civ. P. 45 .................................................................................................... 8, 12

N.Y. CPLR § 302 ........................................................................................................................ 16

**INTRODUCTION**

Defendant Viacheslav Davidenko ("Defendant") respectfully requests that this Court transfer this case to the Western District of Texas pursuant to 28 U.S.C. § 1404(a). The Court should grant Defendant's motion because all of the purported actions giving rise to Plaintiff's claims are alleged to have occurred in the Western District of Texas and Defendant is located in the Western District of Texas with no contacts with the Southern District of New York. Further, no key non-party witnesses to this action reside in New York, and this case has only recently commenced discovery. Transferring the case to the Western District of Texas would make litigation for Defendant less expensive and more convenient, without prejudicing Plaintiff YD Development LLC ("Plaintiff"), which is not entitled to deference in its choice of forum. The relevant factors to be considered in a motion to transfer weigh in favor of a change of venue to the Western District of Texas.

**PRELIMINARY STATEMENT AND BACKGROUND**

Defendant is an individual residing in Austin, Texas and owner of the now terminated YouTube channel, "DavidInvestAI," as well as associated social media accounts on Instagram and TikTok. (Declaration of Viacheslav Davidenko ("Davidenko Decl.") ¶ 1.) Defendant has resided in Austin, Texas since 2016, including throughout the period giving rise to the alleged infringement at issue. (*Id.* ¶ 3.) Defendant does not own or otherwise maintain any property in New York, including offices, a personal residence, bank accounts, or other property. (*Id.* ¶ 4.)

Although Defendant formerly operated a real estate investment venture, namely a sole proprietorship doing business under the trade name Sunrise Capital Group ("Sunrise"), Sunrise operated out of Defendant's home in Austin, Texas, and never maintained offices or otherwise did business (including investing in property) in New York. (*Id.*) Additionally, Sunrise has been

1

inactive and did not close any real estate deals nor raise any money since the end of 2022. (*Id.* ¶ 5.) Although its website remains live, Defendant outsourced its social media activities, namely, its educational blog, to freelancers in Russia. (*Id.*) Because operating Sunrise required extensive travel, and Defendant has young daughters at home, Defendant saw it prudent to discontinue his business involvement in real estate ventures to focus his attention on his family and to be present at home in Austin, Texas. (*Id.*)

Around the end of 2022, Defendant, who has an engineering background, grew interested in generative AI, seeking to educate himself in his spare time on its capabilities to assist him in creating video content. (*Id.* ¶ 6.) With his prior knowledge in real estate, Defendant saw an opportunity to create AI-generated educational videos on real estate topics, focusing on iconic buildings and projects. (*Id.*) Defendant utilized the services of a freelance independent contractor located in Russia, Ms. Julia Ezikhova, who was the content manager for Defendant's social media accounts. (*Id.*) She ultimately created over 500 different videos that were published on Defendant's social media accounts, including YouTube,[1] Instagram, and TikTok, which are accessible around the country and worldwide. (*Id.*) The sole purpose of the videos was to be educational and entertaining. (*Id.*) Defendant did not intend to, nor did he, financially capitalize on these videos, and he did not otherwise relate them to previous business ventures, including Sunrise, which was inactive at the time the videos were created. (*Id.* ¶ 8.) Nor did Defendant ever use the videos or his accounts to solicit real estate business for profit or proffer any "call to action" or business pitch,[2]

---

[1] Defendant chose the name "DavidInvestAI" for his YouTube account to accurately reflect that this undertaking was a blend of his personal interests in AI and real estate investments; hence in naming his channel, he included his personal name—not any trade or business name such as Sunrise—alongside the terms "Invest" and "AI." (Davidenko Decl. ¶ 7.)

[2] Although, as Plaintiff points out, the Sunrise website provided links to Defendant's videos and the videos to the Sunrise website (Compl. ¶ 10), Defendant never directed viewers to undertake any action in connection with his inactive business, nor did he reference Sunrise or include any sort of business pitch in the video scripts themselves.

such as advertising paid real estate courses or consulting services. (*Id.*) To this end, Defendant's YouTube channel disclaimer directly stated: "The content on this channel is for educational and informational purposes only and does not constitute investment, financial, or tax advice. Please consult with qualified professionals for personalized advice. Past performance is not indicative of future results. This channel is not a solicitation or offer to invest."

That Defendant had subscribers for his social media accounts did not in and of itself constitute a financial benefit or translate into any profits from his content. Defendant merely sought to use his real estate knowledge as a jumping-off point in educating himself on AI, in the process sharing his output with the public to enjoy and learn interesting real estate facts. (*Id.*) Indeed, as an AI enthusiast creating and posting video content, Defendant operated at a financial loss.[3] (*Id.* ¶ 9.) Moreover, Defendant managed his online accounts from his home in Austin, and neither visited nor communicated with anyone in New York as part of his content creation. (*Id.* ¶¶ 6, 11–12, 14.) The person who assisted Defendant with content creation was Ms. Julia Ezikhova, the independent contractor located in Russia. (*Id.* ¶¶ 6, 11–12.)

Plaintiff similarly operates social media accounts providing information about real estate and property but with a pitch to direct business to his consulting company. (Compl. ¶¶ 7, 14.) Plaintiff also utilizes generative AI (as well as preexisting copyrighted videos and photographs) in the creation of short videos or reels, claiming copyright solely as to their underlying scripts. (*Id.* ¶ 18, Ex. A (citing copyright registrations disclaiming AI-generated content and excluding a range of preexisting elements including video footage and photographs).) In June 2025, following

---

These were ordinary Internet links included briefly at the videos' end, on the bottom of the screen alongside Defendant's name, to provide more information about Defendant and his blog, so viewers and subscribers could access further educational materials at the Sunrise website. (Davidenko Decl. ¶ 8.)

[3] Contrasted with the significant costs of creating the videos at issue—over $20,000—Defendant earned less than $6,000 for *all 500* of his YouTube videos during the entire two-year period that the DavidInvestAI YouTube channel was active. (*Id.* ¶ 9.)

several months of direct communication between the parties after Plaintiff's YouTube takedown notices alleging infringement of 44 of Defendant's videos, which Defendant in good faith removed (Davidenko Decl. ¶ 14), Plaintiff sued Defendant, alleging copyright infringement and contributory and vicarious infringement. At this point, all the videos in question had been taken down, Defendant's YouTube channel had been terminated—which caused Defendant to lose his 80,000 personal subscribers in the process, essentially the only tangible benefit Defendant had derived from this endeavor—and his TikTok account made private. (*Id.* ¶ 10.)

Although Plaintiff initiated this suit in the Southern District of New York for its own convenience, the foreseeable witnesses knowledgeable about the alleged copyright infringement will be Defendant himself and Defendant's former content manager and independent contractor, Ms. Ezikhova. (Compl. ¶¶ 20, 35; Davidenko Decl. ¶¶ 12, 15.) Neither are located in New York, but reside, respectively, in the Western District of Texas and Russia. (Compl. ¶¶ 20, 35; Davidenko Decl. ¶¶ 12, 15.) Defendant and Ms. Ezikhova are the prospective witnesses knowledgeable about the creation and uploading of the textual and video content on Defendant's social media channels, with Defendant utilizing Ms. Ezikhova's services to create and publish content to his accounts, which he monitored from his home. (Davidenko Decl. ¶¶ 6, 11.) Defendant has no associates in New York and no associates with any New York connection, with knowledge relevant to the claims at issue in this case. (*Id.* ¶ 12.) As such, Plaintiff's ill-founded theory that Defendant is some sort of real estate magnate funneling an online audience into an "investment pipeline" (Compl. ¶ 10) cannot support its claim that Defendant's former partners or associates who happen to reside in New York are viable witnesses with knowledge relevant to this case. (Plaintiff's Pre-Motion Letter Response ("Pl.'s Letter") (ECF 19) at 2–3.) These individuals were in no way involved in the creation of the video content for Defendant's personal social media accounts and would be

completely unknowledgeable. (*Id.*) Ultimately, there are no witnesses with knowledge about the case residing in New York. (Davidenko Decl. ¶ 12.) Finally, any of Defendant's relevant evidence would be located outside of New York. Defendant's documents and physical records, including his computer, hardware, and his electronic files and records, are located at his residence in Texas. (*Id.* ¶ 13.)

In short, Defendant's operation of the social media accounts and any information about the videos at issue is based in the Western District of Texas, which is the locus of operative facts. Defendant has no offices, assets, bank accounts, or other property in New York. (*Id.* ¶ 4.) Defendant simply has no presence in or connection to the Southern District of New York that could sustain maintaining this suit there.

## **ARGUMENT**

Courts may, "in the interest of justice," transfer venue under Section 1404(a) to any forum where the action could have been brought initially. 28 U.S.C. § 1404(a). The purpose behind Section 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . ." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).[4] This case presents the type of scenario contemplated by Section 1404(a).

Deciding whether an action may be transferred involves a two-step inquiry. Initially, the court must determine whether the action "might have been brought" in the proposed transferee venue. *See, e.g., Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006). If so, the court may then determine whether the transfer would best serve the convenience of the parties and witnesses, and the interest of justice. *See id.*

---

[4] Internal citations and quotations are omitted from all citations herein, unless otherwise noted.

The latter prong vests this Court with broad discretion to transfer a case based upon "notions of convenience and fairness" analyzed on a "case-by-case basis" through the weighing of several factors. *Id.* at 372. In general, courts will consider the "balance of convenience" and the overall "interest of justice." *See Nosirrah Mgmt., LLC v. EVmo, Inc.*, 2023 WL 35028, at *2 (S.D.N.Y. Jan. 4, 2023). Once it is determined that the transferee court is a district of proper venue, the Court then applies the following test to determine if transfer is proper. In the Second Circuit, courts will consider the following factors when analyzing the "interest of justice":

> (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Strougo v. Brantley Cap. Corp.*, 243 F.R.D. 100, 106 (S.D.N.Y. 2007). Application of these non-exclusive factors here supports a transfer to the Western District of Texas.

## I.   THIS MATTER COULD HAVE BEEN BROUGHT IN THE WESTERN DISTRICT OF TEXAS.

This action "might have been brought" in the Western District of Texas because both jurisdiction and venue would have been appropriate. First, federal courts in Texas would have subject matter jurisdiction over this action since the sole count of copyright infringement arises under the federal Copyright Act, and exclusive jurisdiction over such disputes is vested in the federal courts. *See* 28 U.S.C. § 1338.

Second, as 28 U.S.C. § 1400(a) provides, "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found." Here, Plaintiff does not dispute—and in fact

affirmatively pleads—that Defendant is a resident of Texas. (Compl. ¶ 8; *see also* Davidenko Decl. ¶ 3.) Certainly, the Western District is a proper forum.

## II.  THE BALANCE OF THE "CONVENIENCE FACTORS" WEIGHS IN FAVOR OF TRANSFERRING THIS CASE TO THE WESTERN DISTRICT OF TEXAS.

When applying the facts of this case to the following factors, it is clear that transfer to the Western District of Texas is required.

### A.  The Convenience of Likely Witnesses—a Primary Factor—Weighs in Favor of Transfer.

The significant witnesses with knowledge or information in this case are located well outside of the Southern District of New York, a circumstance which favors transferring venue. The relative "convenience of the witnesses [in a case] is typically regarded as the most important factor in considering whether to transfer a case under § 1404(a)." *Tianhai Lace USA Inc. v. Forever 21, Inc.*, 2017 WL 4712632, at *2 (S.D.N.Y. Sept. 27, 2017). In analyzing the convenience of witnesses, "a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum," but rather "qualitatively evaluate[s] the materiality of the testimony that the witnesses may provide." *Frame v. Whole Foods Mkt., Inc.*, 2007 WL 2815613, at *5 (S.D.N.Y. Sept. 24, 2007). Particularly in a copyright infringement action, key witnesses are those who were involved in the alleged infringement. *See Kwik Goal, Ltd. v. Youth Sports Publ'g, Inc.*, 2006 WL 1517598, at *4 (S.D.N.Y. May 31, 2006) (citing *AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004)).

Here, Defendant is the case's key witness. Defendant and his former contractor, Ms. Ezikhova, were involved in and knowledgeable about the allegedly infringing videos. Neither reside in New York. Rather, Ms. Ezikhova resides in Russia and Defendant in Texas. (Davidenko

Decl. ¶¶ 3, 6, 15.) Considering that the parties lack the legal means to compel Ms. Ezikhova's testimony if trial were to be held in New York, *see* Fed. R. Civ. P. 45 (non-party witnesses cannot be compelled to travel more than 100 miles or out of the state in which the witness resides, is employed, or regularly transacts business in person), Defendant's testimony, as the party charged with copying Plaintiff's scripts and uploading allegedly infringing videos, adopts increasing import. *See Gaynor v. Diamond*, 2025 WL 2256662, at *10 (S.D.N.Y. Aug. 7, 2025) (acknowledging that "the most important witness in this case" was "likely [the Defendant] himself" who resided in the transferee district (citing *Bare Body Laser Spa, Inc.* v. *Billings*, 2024 WL 3445333, at *7 (S.D.N.Y. July 17, 2024) (collecting cases supporting transfer where the most critical testimony is likely to be provided by a defendant who resides in the transferee district))). Since witnesses with any knowledge of Defendant's videos are located in Texas or Russia, and indeed the Texas-based Defendant is the most critical witness in this case, this factor favors transfer.

Any claims by Plaintiff surrounding ostensible non-party witnesses based in New York are inapposite. (Pl.'s Letter at 2–3.) Courts in this District do not credit the identification of prospective but unknowledgeable in-state witnesses. *See IXI Mobile (R & D) Ltd. v. Samsung Elecs. Co.*, 2015 WL 4720293, at *3 (S.D.N.Y. Aug. 6, 2015) (party and nonparty witnesses identified by plaintiff whose "testimony undisputedly would not concern [facts relating to] allegedly infringing inventions. . . . [were] neither. . . key witness[es], and the presence of these individuals is entitled to barely any weight"). Here, Plaintiff claims that various non-party witnesses reside in New York, including "Defendant's former partner" at Sunrise, unnamed content creators outside of this case from whom Plaintiff alleges Defendant separately copied, and former, unspecified "clients and business partners". (Pl.'s Letter at 2–3.)

Crucially, however, Plaintiff fails to assert that any of these witnesses are knowledgeable as to the facts or claims of *this case*. (*Id.*) Subpoenaing former partners, clients, and random content creators lacking in any relevant knowledge would be an abuse and directly susceptible to motions to quash. Plaintiff should not be allowed to drum a "tallied" group of unknowledgeable persons into a list of witnesses to present before the Court in an attempt to swing this factor in its favor. At most, such exercise "is entitled to barely any weight," as the fact remains—Defendant is the crucial witness in this case, and Defendant resides in Texas.

**B.  The Relevant Records and Primary Sources of Proof Are Located in the Western District of Texas.**

The "relative ease of access to sources of proof" favors litigating this case in Texas because all of Defendant's physical records, files, computers, and electronic files and records are located there. (Davidenko Decl. ¶ 13.) In copyright infringement actions generally, "the majority of evidence typically comes from the accused infringer," therefore favoring transfer. *Tianhai Lace USA Inc.*, 2017 WL 4712632, at *5; *Caldwell v. Slip-N-Slide Recs., Inc.*, 2011 WL 3251502, at *4 (S.D.N.Y. July 26, 2011) ("[T]he place where the defendant's documents are kept weigh in favor of transfer to that location."). This factor is particularly relevant because Plaintiff will likely have little, if any, physical evidence to produce whereas Defendant may have to produce a significant volume of documents and data. *See Tianhai Lace USA Inc.*, 2017 WL 4712632, at *5.

Here, the evidence includes records relating to the alleged infringement at issue in this case as well as Defendant's general records regarding the creation and uploading of content to his social media channels, and Defendant's financial records. (Davidenko Decl. ¶ 13.)  It would make little sense to transport this potential physical evidence to New York when it would be far easier, less expensive, and more convenient to simply litigate the case in Texas where the proofs reside.

9

While advances in document storage and duplication technology lessen the weight courts place on the location-of-records factor, this factor still weighs in favor of transfer where, as here, discovery is in its early stages, prior to document production, and Defendant can show that litigating in the current district will be expensive and burdensome with no indication Plaintiff would be similarly burdened in the event of a transfer. *See Federman Assocs. v. Paradigm Med. Indus., Inc.*, 1997 WL 811539, at *5 (S.D.N.Y. Apr. 8, 1997) (holding that transfer in case in its early stages "would facilitate [ongoing] discovery in the district where . . . documents are located").

### C.  **The Comparative Convenience of the Parties Favors Transfer.**

Only Plaintiff is present in the Southern District of New York. (Compl. ¶ 7.) While New York may be more convenient for Plaintiff, Texas is more convenient for Defendant. Obviously, transfer of this case will be more convenient for Defendant. However, an individual AI enthusiast and content creator like Defendant should not be required to litigate a case of alleged copyright infringement in a forum more than 1,500 miles away simply because it is more convenient for the Plaintiff. Further, Defendant will be much more inconvenienced by litigating this case in New York than Plaintiff would be litigating in Texas. As discussed above, Defendant and all of his documents and records are in Texas, and to litigate this case in New York would entail significant travel, expense, and interruption of Defendant's personal life with his young family. (*See* Davidenko Decl. ¶¶ 13, 16.) In comparison, and in contrast, Plaintiff apparently embraces travel and has built it into its business model, noting for instance, that "Plaintiff's principal personally visit[s]" the site locations featured in its videos. (Compl. ¶ 15.) Such locations including far-ranging locales beyond New York, such as Las Vegas, Nevada, Palm Beach, Florida, Paris, France, London, England, Hong Kong, and the United Arab Emirates. (Compl. at Ex. A.) The comparative convenience of the parties weighs in favor of transferring this case to Texas.

**D. <u>The Locus of Operative Facts, Another Primary Consideration, Favors Transfer to Texas.</u>**

None of the operative facts of this case will be located in or discovered in New York, but are instead situated in the transferee district, Texas. The locus of operative facts is a "primary factor" in determining whether to transfer venue. *See, e.g.*, *Gaynor*, 2025 WL 2256662, at *10; *Tianhai Lace USA Inc.*, 2017 WL 4712632, at *4. "Both this factor and the location of material witnesses bear on where the 'center of gravity' of the action rests." *Gaynor*, 2025 WL 2256662, at *10. Courts find that this factor "substantially favors transfer from this district when a party 'has not shown that any of the operative facts arose in the Southern District of New York.'" *Id.*

In determining the locus of operative facts, courts examine the location of the events giving rise to the claims, focusing on the degree of the relationship between the chosen forum and cause of action. *Id.* at *11. "[C]ourts discussing the locus of operative facts for purposes of a motion to transfer have repeatedly stated that, for a copyright claim, the operative facts usually relate to the design, development and production of an infringing product," i.e., the creation of an infringing work. *Tianhai Lace USA Inc.*, 2017 WL 4712632, at *4–5 (cleaned up); *Capitol Recs., LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 367–68 (S.D.N.Y. 2009) (finding locus of operative facts situated in California, where allegedly infringing website was designed and developed). Accordingly, "the question is not where the Plaintiff's business is located (and therefore, where it incurred financial injury), but where the *infringement* occurred." *Tianhai Lace USA Inc.*, 2017 WL 4712632, at *5. It is, moreover, "well-established that if infringement occurred all over the country or world—i.e. if sales [or as here, views] were not uniquely concentrated in any given forum— that such sales alone do not render a forum the locus of operative facts for a copyright claim." *Id.* (noting practical concern that if locus of injury rendered a forum a locus of operative fact, this factor would impermissibly collapse into the Plaintiff's chosen forum,); *Capitol Recs., LLC*, 611

11

F. Supp. 2d at 368 ("Although *injury* from copyright infringement occurs where the copyrights are owned, the copyrighted works are alleged to have been disseminated worldwide [via website accessible worldwide] and the *operative* facts will determine liability occurred in the proposed transferee forum.").

In this case, Defendant's allegedly infringing videos were developed, created, posted, and monitored solely by individuals residing in Texas and Russia. (Davidenko Decl. ¶¶ 6, 11.) Decisions regarding Defendant's content occurred in the same locations. (*Id.*) These facts favor transfer to the Western District of Texas. That Plaintiff is a New York LLC with its principal place of business in New York City and alleges to have felt an injury there (Compl. ¶¶ 7, 12), has no bearing; this fact cannot be conflated with the locus of operative facts itself, which is in Texas. *Tianhai Lace USA Inc., Inc.*, 2017 WL 4712632, at *4. As such, this factor strongly favors transfer.

### E.  **The Availability of Process to Compel Attendance of Unwilling Witnesses Is Neutral.**

Defendant's former independent contractor, the relevant non-party witness in this matter with knowledge related to Plaintiff's allegations, is located outside of the Southern District of New York. (Davidenko Decl. ¶ 15.) Accordingly, she would not be subject to subpoena for trial. *Gaynor*, 2025 WL 2256662, at *13 (citing Fed. R. Civ. P. 45(c)(1)). Therefore, this factor is neutral.

### F.  **The Relative Means of the Parties Favors Transfer.**

There is no evidence to suggest that Plaintiff as a real estate consultant who travels all over the world would not have the means to enforce a case in the Western District of Texas. (Compl. ¶ 15.) Defendant, albeit for personal reasons, has not had an active business for nearly three years and instead has devoted his personal time to his family and learning how to use AI for no direct financial purpose. (Davidenko Decl. ¶¶ 5–6, 8–9, 16.) This factor, too, favors transfer.

Incurring the expense of engaging in cross-country litigation when Defendant is the key witness in the case and is located in Texas would impose an unreasonable financial burden on Defendant. As discussed, Defendant created the videos at issue with the help of one other individual, his former independent contractor based in Russia. (*Id.* ¶ 6.) Defendant is not the real estate magnate that Plaintiff would paint him as, but is, rather, an individual facing the outsized costs of litigation pertaining to several personal social media accounts which were already operating at a loss. (*See Id.* ¶¶ 9, 16.) His other businesses are not related to this matter. (*Id.* ¶¶ 6, 8.)

If forced to litigate in New York, Defendant would presumably have to travel to the East Coast multiple times, which would essentially put Defendant's personal life on hold during those times. (*See id*. ¶ 16.) The burden of managing and overseeing this litigation falls solely upon Defendant's shoulders, considering that these were personal social media accounts contributed to by Defendant and Ms. Ezikhova. (*See id.* ¶ 6.) It would be a significant burden, then, to require Defendant to undertake extensive travel back and forth to New York. Defendant is raising a young family in Texas and has taken significant pains to reduce the burdens of travel in his life, including rarely vacationing out of state and going so far as to shutter Sunrise in order to avoid the burden of travel. (*See id.* ¶ 5.) Extended absence on his part would be both financially and personally challenging for Defendant (*See id.* ¶¶ 5, 16.)

It will be significantly less costly for Plaintiff to defend itself in the Western District of Texas, which would eliminate costs associated with document duplication and shipping, extra data backup, copying, and processing, and lost personal and professional opportunities and productivity. It would also be significantly less burdensome for Plaintiff to travel to Texas, where

13

all of the proof and the case's primary witness resides. (*See id.* ¶¶ 3, 13.) These cost considerations warrant transferring this case to Texas.

### G. **Familiarity with Governing Law Factor Is Neutral Since This Is a Federal Copyright Case.**

Because this case arises under federal copyright law, any federal district court is presumably familiar with Title 17 of the United States Code and is equally competent to adjudicate a copyright dispute. In such circumstances, this factor is considered neutral. *Freeplay Music, LLC v. Thermaltake USA, Inc.*, 2019 WL 12375285, at *5 (S.D.N.Y. July 9, 2019).

### H. **The Weight Accorded to Plaintiff's Choice of Forum Should be Minimal and Favors Transfer.**

Courts in this district accord less deference to a plaintiff's choice of forum when, as here, "the operative facts have few meaningful connections to the plaintiff's chosen forum . . . ." *Fed. Ins. Co. v. Custom Expedite LLC*, 2009 WL 508393, at *3 (S.D.N.Y. Feb. 24, 2009). In such cases, "the importance of the plaintiff's choice . . . measurably diminishes." *Id.*; *WellQuest Int'l, Inc. v. Genesis Intermedia.com, Inc.*, 2001 WL 1246592, at *6 (S.D.N.Y. Oct. 18, 2001) ("[W]here the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is not accorded the same 'great weight' and in fact is given reduced significance."); *see also Littlejohn & Co., LLC v. Safeguard Props., LLC*, 2010 WL 11889064, at *4 (S.D.N.Y. Aug. 23, 2010) ("[T]he location of the operative events is a 'primary factor' in a transfer motion.").

Here, the gravamen of Plaintiff's complaint is that Defendant posted to his social media accounts 44 short videos of approximately one minute each with allegedly infringing textual scripts. (Compl. ¶¶ 1, 3; *see also* Compl. at Ex. A.) All of the alleged infringements would have occurred in Austin, Texas, where Defendant monitored the content for his accounts, including

14

content compiled by his Russian contractor, including the 44 videos at issue here. (*See* Davidenko Decl. ¶¶ 3, 6.)  As noted above, Defendant does not maintain a residence, office, or any other presence in the Southern District of New York and has no independent contractors or employees, assets, bank accounts, or property here. (*Id.* ¶ 4.)

The Southern District of New York has no particular interest in this case, whereas the Western District of Texas has a significant interest not only in the actions that Plaintiff alleges occurred in Texas, but also in overseeing the administration of justice in connection with its domiciliaries. Plaintiff's choice of forum deserves little to no deference in this case, and therefore this factor weighs in favor of transfer.

## I. <u>The Interest of Justice and Trial Efficiency Favors Transfer.</u>

### 1. <u>Interest of Justice</u>

"The 'interest of justice' is a separate component of a § 1404(a) transfer analysis, and may be determinative in a particular case." *Littlejohn & Co.*, 2010 WL 11889064, at *5. Where "it is unclear whether th[e] Court can exercise personal jurisdiction over" a defendant, this factor strongly favors transfer. *Id.*; *see also Columbia Pictures Indus., Inc. v. Fung*, 447 F. Supp. 2d 306, 309 n.2 (S.D.N.Y. 2006) (noting that although the Defendant's "claim of lack of personal jurisdiction need not be decided, his personal contacts with New York are sufficiently scanty to raise a colorable jurisdictional issue, which itself weighs in favor of transfer"); *Worldwide Futgol Assocs., Inc. v. Event Entm't, Inc.*, 983 F. Supp. 173, 182 (E.D.N.Y. 1997) ("[T]he mere appearance of a colorable jurisdictional issue may be a factor in a court's decision to transfer venue under 28 U.S.C. § 1404(a)."). Moreover, where the locus of operative facts and convenience of party and non-party witnesses favor transfer, the "natural focus of [the] litigation is [the transferee district]," such that transfer will also further the interests of justice. *IXI Mobile (R & D) Ltd.*, 2015

15

WL 4720293, at *9 (transferring furthered the interests of justice and undercut any deference afforded Plaintiffs' choice of forum in New York).

Here, it is not "unclear whether the Court can exercise personal jurisdiction over" Defendant. It cannot. As discussed, Defendant is being sued in a foreign jurisdiction where he has never committed any actionable conduct. The only evidence that Plaintiff has that Defendant targeted New York is weak and unpersuasive. He asserts that the content of some of the videos are of New York buildings; the videos are accessible to New Yorkers; and asserts unsubstantiated claims that Defendant derived revenue from "New York-based investors and partnerships," together with a handful of settlement emails between Plaintiff and Defendant following the YouTube takedown notices. (Compl. ¶ 12.) Plaintiff's assertions are not enough to haul Mr. Davidenko across the country to New York court. *See Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 423 (S.D.N.Y. 2009); *see also, e.g.*, *Crescent Publ'g Grp. v. Am. Video Corp.*, 1996 WL 143928, at *2 (S.D.N.Y. Mar. 29, 1996) (citing N.Y. CPLR § 302); *Kimco Exch. Place Corp. v. Thomas Benz, Inc.*, 34 A.D.3d 433, 434 (2d Dep't 2006) (act of faxing material and "making a few telephone calls" to plaintiff in New York "d[id] not qualify as purposeful acts constituting the transacting of business" or amount to "purposeful availment of the New York forum but rather were merely attempts to contact the plaintiff").

Notably, Plaintiff can point to no "tangible manifestations" of Defendant's intent to target the state or "concrete facts known to [Defendant] that should have alerted" him to the possibility of being brought into court there. *Royalty Network Inc.*, 638 F. Supp. 2d at 424. Defendant did not transact business within New York by virtue of operating social media accounts that were capable of reaching New Yorkers in the same way as viewers worldwide, *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 569–70 (E.D.N.Y. 2011) ("It stretches the meaning

of 'transacting business' to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred."). Nor did Defendant otherwise commit infringement in the state by operating social media accounts from Texas. *See Id.* at 570–71 ("Although it is in the very nature of the Internet that the allegedly infringing marks contained in these websites can be viewed anywhere, this does not mean that the infringement occurred everywhere" and noting that a tort would only be committed where the website is created and/or maintained). Finally, Defendant did not seek to serve the New York market, target it as a particular geographic region in his channel's over 500 videos, or derive "substantial revenue" from any of his online content such that he could reasonably foresee being brought into court here. *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 (1980) (the "predicate for jurisdiction . . . must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there."); (*See* Davidenko Decl. ¶¶ 4, 11.)

Accordingly, Mr. Davidenko cannot be found to have committed a tortious act within New York sufficient to assert jurisdiction over him pursuant to, and the interests of justice would be squarely served by transferring this case.

### 2. Trial Efficiency

This factor looks to the ability of the two forums to efficiently adjudicate this dispute. *See IXI Mobile (R & D) Ltd.*, 2015 WL 4720293, at *9. Courts look to the posture of the case at the time of transfer and potential risk that transfer will delay resolution of the action, favoring transfer where the case is not deep into discovery and transfer will not affect any discovery activities

already undertaken. *Id.* Although this factor is normally given little weight, when combined with the balance of the remaining factors, this factor further confirms that transfer is necessary.

Here, Defendant seeks transfer from the Southern District of New York to the Western District of Texas. According to www.uscourts.gov, the case load of the Texas court is much lower, and the time in which a case gets to trial is much faster. In 2024, the Western District of Texas had an average of 4,455 filed cases per judgeship, of which 740 related to Intellectual Property, and the time from filing to trial was 29.4 months. (9/22/25 Declaration of Nancy E. Wolff, Ex. A (Judicial Caseload Profiles).) In the Southern District of New York, by contrast, each judgeship had an average of 11,384 filed cases, of which 981 related to Intellectual Property, and the time from filing to trial was 41.0 months. (*Id.*[5]) Based upon these statistics, the Western District of Texas would be more efficient to adjudicate this dispute against Defendant, a Texas resident. Accordingly, this factor favors transfer.

Further, discovery in this case is in its early stages, and in the event that the Court issues its endorsement of the parties' submitted Proposed Case Management Plan and Scheduling Order (ECF 22) during the pendency of the present transfer briefing, fact discovery will still be at its outset, with only initial discovery requests having been served. This timing would preserve judicial efficiencies. At such juncture, the only fully-briefed matters before the Court would be Defendant's instant motion to transfer, discovery would be due to proceed for several more months, and any served discovery requests would be "as germane in the [Western District of Texas] as in the Southern District of New York." *IXI Mobile (R & D) Ltd.*, 2015 WL 4720293, at *9.

---

[5] Courts routinely consider this type of statistical data when evaluating whether this factor favors transfer. *See e.g.*, *Indian Harbor Ins. Co. v. NL Env't Mgmt. Servs., Inc.*, 2013 WL 1144800, at *11 (S.D.N.Y. Mar. 19, 2013).

When looking at the "totality of the circumstances," the overwhelming weight of the factors and the interest of justice favor transfer. The law places Defendant's residence and the location of the events giving rise to the claims in this case as the proper forum for a case to be litigated. In this case, the only district that qualifies is the Western District of Texas.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant Viacheslav Davidenko respectfully requests that this Court transfer this case to the United States District Court for the Western District of Texas.

Respectfully submitted,

Dated: September 22, 2025

Cowan, DeBaets, Abrahams
& Sheppard LLP

By: /s/ Nancy E. Wolff
Nancy E. Wolff, Esq.
Elizabeth Safran, Esq.
60 Broad Street, 30th Floor
New York, New York 10004
Telephone: (212) 974-7474
Fax: (212) 874-7474
nwolff@cdas.com
esafran@cdas.com

*Attorneys for Defendant Viacheslav Davidenko*

## <u>CERTIFICATE OF SERVICE</u>

I, Nancy E. Wolff, hereby certify that a true and correct complete copy of the foregoing

Defendant Viacheslav Davidenko's Memorandum of Law in Support of his Motion to Transfer

has been served on all counsel of record via the Court's CM/ECF service.

/s/ Nancy E. Wolff
Nancy E. Wolff

## <u>CERTIFICATE OF WORD COUNT</u>

I, Nancy E. Wolff, hereby certify that this memorandum complies with Rule 7.1 of the

Local Rules of the United States District Courts for the Southern and Eastern Districts of New

York and based on the word-count function of Microsoft Word, the memorandum contains 6,079

words, excluding the caption, prefatory tables, and signature blocks.

<u>/s/ Nancy E. Wolff</u>
Nancy E. Wolff